UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>RYAN BISSONETTE,<br><br>                Defendant. | 5:14-CR-50055-JLV<br><br>REPORT AND RECOMMENDATION |

Pending is Defendant's Motion to Exclude Eyewitness Identification Testimony (Docket 98). An evidentiary hearing was held on Wednesday, October 28, 2015. Defendant was personally present and represented by his attorney of record, Stephen Demik. The Government was represented by Eric Kelderman. Three witnesses testified at the hearing. Seventeen exhibits were received into evidence. Both parties have submitted briefs and oral argument was heard at the conclusion of the hearing. The following is this court's recommended disposition.

## **JURISDICTION**

Defendant is charged in an Indictment with Aggravated Sexual Abuse by Force in violation of 18 U.S.C. §§ 1153, 2241(a)(1), and 2246(2)(C); and Sexual Abuse in violation of 18 U.S.C. §§ 1153, 2242(2), and 2246(2)(C).[1] The pending Motion was referred to this magistrate judge for the holding of an evidentiary

---

[1] Defendant was also charged with a third count, Aggravated Sexual Abuse of a Minor in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(C) in a Superseding Indictment, but this count was severed. (Docket. 87).

1

hearing and the issuance of a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and Honorable Jeffrey L. Viken's Standing Order dated March 9, 2015.

## FACTUAL BACKGROUND

In the early morning hours, at approximately 4:00 a.m. on August 8, 2013, Jackie Janis reported to law enforcement that she had been sexually assaulted. She told the officers that a man had offered her a ride home in his pickup truck,[2] but instead, he took her outside of town and sexually assaulted her. During the assault, Janis struck the man with a small portable propane tank and got out of the vehicle. (Docket 111 at p. 6). Instead of being left alone outside of town, Janis jumped into the bed of the pickup truck as it drove off. When the truck approached a trailer court, Janis jumped out. Janis said she left behind a sandal and a part of her cellular phone. (Docket 111 at p. 95). She later described the sandal to law enforcement as a white sandal with yellow straps. Id. Janis approached some bystanders asking if they knew the identity of the man who was driving the pickup truck. (Docket 111 at p. 7). The bystanders gave Janis the name[3] of the suspect, as well as identified him as a mechanic that lives in East Ridge housing. (Docket 111 at p. 7). When the bystanders refused to help Janis, she walked toward the convenience store and contacted law enforcement. After interviewing Janis, law enforcement drove Janis through the trailer court so she could identify where she got out of

---

[2] Janis described the pickup as "black or dark" in color. (Docket 97 p. 2).
[3] Janis was unable to recall the name of the suspect.

2

the truck and at which trailer the bystanders were located.  Id.  Law enforcement then took Janis to Indian Health Services to get medical attention.

Law enforcement responded to an unrelated service call.  Thereafter, Officer David Whary and Officer Jack discussed possible suspects in the Janis assault.  They identified Dominic Waters and Ryan Bissonette as two mechanics who lived in the East Ridge housing area.  Law enforcement drove by Dominic Waters residence and took photographs of a black GMC Jimmy and a dark colored Sonoma pickup truck which were parked at the Dominic Waters' residence.  (Exhibit 3, 4).  Officer Whary went to the police department and printed five photos of individuals to show Janis.  Officer Whary initially selected the photos of Dominic Waters and Ryan Bissonette because they were mechanics who lived in East Ridge.  Officer Whary did not recall Janis giving him a physical description of the suspect.  (Docket 111 at p. 46).  However, Officer Jack recalled Janis informing them that her attacker had short hair.  (Docket 111 at p. 163).  The other three photographs were pictures of males, "[a]ll Native American, all short hair that had a similar look."  (Docket 111 at pp. 10, 46).  The photographs where all head shots, including a frontal shot and a profile.  (Docket 111 at p. 10).  The photographs were all mug shots with the suspects standing in front of a height chart.  (Docket 111 at p. 96).  All of the photographs contained the names of the suspects.  Id.  The lineup depicted men basically the same size, excepting Dominic Waters, who was a "little bit heavier set than the rest of them."  (Docket 111 at pp. 10, 46).  Exhibit 10 and Exhibit 11 are copies of the photographs of Waters and Bissonette which were

used in the photo lineup.  The photographs depict Dominic Waters in jail stripes and Ryan Bissonette wearing a plain white shirt. (Docket 111 at p. 50). The photograph of Dominic Waters is blurrier than the photograph of Ryan Bissonette.

   Officer Whary then went to the emergency room and showed Janis the five person photo lineup that included Mr. Bissonette's photo. Officer Wharry testified that he showed Janis the five photos and he asked her, "Can you identify your attacker from these photographs?"  (Docket 111 at p. 16).  Janis looked them over and almost immediately pointed to the picture of Ryan Bissonette.  (Docket 111 at 10-11, 16).  Officer Whary described Janis' level of certainty as follows, "When she saw the photograph, almost immediately she hit her hand on the photograph and became irate and said, 'That's the [explicative] that did it to me.'"  (Docket 111 at 16).  Janis then circled both the profile and frontal shots of Mr. Bissonette, signed and dated the photograph. Exhibit 10.   The other four photographs were disposed by Officer Whary because he didn't think he would need them for his report.  (Docket 111 at 14). Officer Whary testified that it was a mistake to dispose of the other photographs; it wasn't because he was trying to hide anything.  (Docket 111 at 15).  Other than Dominic Waters, Officer Whary does not recall the other three persons whose photos were included in the lineup.  Id.  The Oglala Sioux Tribe Department of Public Safety does not have any policy or procedure establishing any protocol for photo lineups.  (Docket 111 at p. 58).

4

Janis was also shown a blurry photograph of a dark color Sonoma pickup truck, which was parked at the residence of Dominic Waters. (Docket 111 at 30-31; Exhibit B). Janis identified it as the vehicle she was attacked in earlier that morning. Janis was incorrect about the pickup truck. It was later determined that the attack occurred in a black Chevy pickup truck.

## DISCUSSION

### A.   Whether identification testimony is admissible

Defendant moves to exclude identification testimony by the victim and law enforcement witnesses in this case. He alleges that the identification procedures were impermissibly suggestive and unreliable. The government argues to the contrary.

In determining whether admitting identification evidence would violate a defendant's due process rights, a court conducts a two-step inquiry. The first step "is to determine whether the [photo] array was impermissibly suggestive." Schawitsch v. Burt, 491 F.3d 798, 802 (8th Cir. 2007). If the array was impermissibly suggestive, then the court considers "whether under the totality of the circumstances the array created a substantial risk of misidentification at trial." Id. "It is the likelihood of misidentification which violates a defendant's right to due process . . ." Neil v. Biggers, 409 U.S. 188, 381-82 (1972).

The identification procedure is not unnecessarily suggestive "when there are no differences in appearance tending to isolate the accused's photograph." Id. (citing United States v Mays, 822 F.2d 793, 798 (8th Cir. 1987) (photo array not unduly suggestive where only two persons in the spread had facial hair but

all persons had general physical characteristics similar to the defendant)). A procedure is also not impermissibly suggestive when the officers do not suggest that the defendant is the person in a particular picture or suggest that the defendant engaged in wrong doing. See United States v. Omar, 786 F.3d 1104, 1108-1109 (8th Cir. 2015).

     If the identification procedure is found not to be unnecessarily suggestive, that is the end of the inquiry. However, if the identification procedure is found to be unnecessarily suggestive, the question becomes "whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive." Biggers, 409 U.S. at 199. "Reliability of the eyewitness identification is the linchpin" of the determination whether improper police conduct created a "substantial likelihood of misidentification." Perry v. New Hampshire, 132 S.Ct. 716, 724-25 (2012). The factors to be considered include "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200; Manson v. Brathwaite, 432 U.S. 98, 114 (1977). "In order to show that pretrial identification procedure was unreliable, defendant bears the burden to first establish that the photographic spreads shown to witnesses were 'impermissibly suggestive,' and, second, that under the totality of the circumstances, the suggestive confrontation created a very substantial

6

likelihood of irreparable misidentification." United States v. House, Cr. No. 14-40005-01-KES, 2014 WL 1600405, at ¶2 (D.S.D. April 12, 2014) (citing United States v. Martin, 391 F.3d 949, 952 (8th Cir. 2004)).

In United States v. Peneaux, 538 F.Supp.2d 1177, 1180 (D.S.D. 2008), two defendants moved to suppress the photo identification by an alleged sexual assault victim, arguing that the procedure violated their due process rights. The victim claimed that she had been raped at a party and her cell phone and money had been stolen. After the victim reported the rape to police, she did not give a description of the defendants. The victim's mother called the victim's cell phone and a woman answered. The woman who answered said that she received the phone from her boyfriend. The boyfriend was later charged as one of the perpetrators of the rape. Officers set up a photo array with pictures from the police database of people who were present at the party. The array included one of the defendant's pictures. The victim immediately identified the defendant with certainty. Later, another photo array was prepared with seven other pictures of people with physical characteristics similar to the second defendant. The victim identified the second defendant with certainty.

The district court adopted Magistrate Judge Moreno's recommendation that the defendant's motion to exclude eyewitness identification testimony should be denied. The court found that even though the victim was allegedly intoxicated and there was a lack of evidence regarding the amount of lighting during the attack, the victim was able to "quickly and decisively select each defendant from the photo arrays displayed to her." The victim was also not a

"casual observer, but was part of and (unfortunately) intimately involved in, the alleged rapes as they were being committed." Id. at 1183. Under the totality of the circumstances, there was not a substantial risk of misidentification. At trial, defendants would have an opportunity to cross examine the victim about her ability to perceive and recall the identity of her alleged assailants.

Here, Mr. Bissonette has failed to meet his burden that the photographic spreads were impermissibly suggestive. Officer Whary testified that he presented five photographs to Janis. Two of the five photographs were admitted into evidence for the court's review. The other three photographs were pictures of males, "[a]ll Native American, all short hair that had a similar look." (Docket 111 at pp. 10, 46). The photographs where all head shots, including a frontal shot and a profile. (Docket 111 at p. 10). The lineup depicted men basically the same size, excepting Dominic Waters, who was a "little bit heavier set than the rest of them." Id. The photographs depict Dominic Waters in jail stripes and Ryan Bissonette wearing a plain white shirt. There was no testimony regarding whether the other three photographs depicted person in jail stripes or street clothes.

Defendant argues that the other three photographs were discarded and therefore it is impossible to compare those with the two known photographs for a determination on whether they were impermissibly suggestive. The Defendant fails to cite any authority that the failure to preserve the photographs raises a presumption that the lineup was impermissibly suggestive.

In Sales v. Harris, the Second Circuit Court of Appeals considered a similar issue whereby the photos used in the lineup were discarded. 675 F.2d 532 (2nd Cir. 1982). The court held, "[i]n light of the corroborated testimony that the photo array was comprised mostly of blacks, but also contained a few whites and Hispanics, we do not draw and inference of suggestiveness from the failure of the police to preserve the photo array." Id. at 538. The court noted that although the preferred procedure would have been to preserve the array, it does not create a presumption of suggestiveness. See also Montgomery v. Greer, 956 F.2d 677 (7th Cir. 1992). However, the Fifth Circuit Court of Appeals has held that the failure to preserve the photo array creates a presumption that the lineup was impermissibly suggestive. United States v. Honer, 225 F.3d 549, 553 (5th Cir. 2000); Branch v. Estelle, 631 F.2d 1229, 1234 (5th Cir. 1980). Under this approach, the second step of the inquiry is to consider whether, under the totality of the circumstances if the photo line-up was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Honer, 225 F.3d at 553. The Eighth Circuit has not considered this exact issue.

Assuming the more liberal standard whereby a presumption of suggestiveness is established through the missing photos, the Court will apply the second step of the Schawitsch analysis to Mr. Bissonette's case. Considering the totality of the circumstances as well as the Biggers and Mason factors, Janis' identification of Mr. Bissonette was reliable. Although the assault took place in the dark, her first contact with the attacker occurred

9

while she was walking from East Ridge toward Crazy Horse, where there would have been some light either from street lights or from the lights from the dashboard of the pickup truck.  The victim spent a significant amount of time with her attacker while he drove out of town, and traveled several miles.  (Doc. 111, pp. 135-36).  Unfortunately, a sexual assault is an up close personal encounter that the victim would have witnessed first-hand.  As to her degree of attention, Janis was not a casual observer but was intimately associated with the assault. There is no evidence that the defendant was wearing a mask or disguise which would obstruct Janis' view.   Janis was presented with all five photographs and was asked an open ended question, "Can you identify your attacker from these photographs?"  Janis responded within 5 seconds and with a level a certainty and decisiveness as evidenced by her profanity and emotion.  Janis was presented the photo array within a few hours of her assault.

Defendant argues that Janis was intoxicated and incorrectly identified Dominique Waters' truck as the vehicle she was assaulted in.  While the record establishes that Janis had slightly slurred speech, smelled of alcohol and was under the influence, she was not unsteady on her feet and law enforcement could understand everything Janis was saying.  As to the mistaken vehicle identity, Janis identified a black Sonoma pickup truck (Exhibit A), which looks similar to the black Chevy pickup truck (Exhibit B).   These two issues do not outweigh the other factors which overwhelmingly establish that there is not a substantial risk of misidentification.  As noted in Peneaux, the Defendant will

have the opportunity to cross-examine the alleged victim regarding her ability to perceive and recall the identity of her alleged assailant at trial.

## CONCLUSION

For the reason more fully explained above, it is respectfully recommended to the District Court that Defendant's Motion to Exclude Eyewitness Identification Testimony (Doc. 98) be denied.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the District Court.  *Thompson v. Nix*, 897 F.2d 356 (8th Cir. 1990); *Nash v. Black*, 781 F.2d 665 (8th Cir. 1986).

DATED this 2nd day of May, 2016.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge

11